IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

AMANDA L. A.,[1]                          )
                                          )
                    Plaintiff,            )
                                          )        CIVIL ACTION
v.                                        )
                                          )        No. 19-1250-JWL
ANDREW M. SAUL,                           )
Commissioner of Social Security,         )
                                          )
                    Defendant.            )
_____  )

MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security

denying Supplemental Security Income (SSI) benefits pursuant to sections 1602, and

1614 of the Social Security Act, 42 U.S.C. §§ 1381a, and 1382c (hereinafter the Act).

Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS

that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g)

AFFIRMING the Commissioner's final decision.

I.      Background

Plaintiff filed an application for SSI on December 28, 2015.  (R. 12, 205-10).

After exhausting administrative remedies before the Social Security Administration

_____

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the
interest of protecting the privacy interests of Social Security disability claimants, it has
determined to caption such opinions using only the initial of the Plaintiff's last name.

(SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ erred in weighing the opinions of the mental healthcare specialists and consequently the residual functional capacity (RFC) she assessed in not supported by the record evidence.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala,

36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. § 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past

relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

## II.    Discussion

Plaintiff points out that the ALJ accorded some weight to the psychiatric opinions of the state agency psychological consultants Dr. Duclos, Psy.D., and Dr. Cohen, Ph.D., but little weight to the opinions of the nurse practitioner and licensed professional counselor who treated her, Ms. Peckham-Wichman, APRN, and Ms. Ledlow, LPC.  (Pl. Br. 10).  She argues the ALJ failed "to provide reasons supported by substantial evidence for discounting the treating source opinions.  Specifically, she argues the ALJ improperly relied on isolated treatment notes indicating normal examination findings while ignoring the surrounding examination findings illustrating a waxing and waning of symptoms." Id.  Plaintiff argues the ALJ isolated portions of the treatment record to find Plaintiff's limitations are not as extensive as opined by the mental healthcare providers who treated her and misrepresented the record which shows a "waxing and waning of symptoms that are consistent with the treating source opinions."  Id. at 12 (citing Freemyer v. Sullivan,

723 F. Supp. 1417, 1420 (D. Kan. 1989); <u>Roberts-Jewett v. Astrue</u>, No. 11-1066-JWL, 2012 WL 1388733, at *4 (D. Kan. April 20, 2012); <u>Long v. Barnhart</u>, No. 03-2570-JWL, 2004 WL 1960104, at *9 (D. Kan. Sept. 3, 2004)).  Plaintiff summarizes the treatment records which in her view demonstrate waxing and waning and were ignored by the ALJ. (Pl. Br. 12-15).  Finally, Plaintiff acknowledges that the state agency sent her to a psychologist, Dr. Karr, Ph.D., for a psychological examination and argues the ALJ accorded great weight to Dr. Karr's opinion "but failed to account for [Dr. Karr's] indication that [Plaintiff] had difficulty demonstrating the ability to concentrate effectively for short periods and that she was capable of at least average intellectual skills [only] if depression and anxiety are decreased.  <u>Id.</u> at 15.

The Commissioner argues the ALJ's decision is reasonable and is supported by the record evidence.  He argues that the record contains the opinions of five mental healthcare specialists and he summarizes the opinions of those five specialists.  (Comm'r Br. 4-5).[2]  He notes that the ALJ found Plaintiff has severe mental impairments but found that Plaintiff's allegations of symptoms resulting from her mental impairments are not consistent with the record evidence.  <u>Id.</u> at 5.  He argues,

> the ALJ provided a thorough discussion of the mental health treatment notes of record showing that Plaintiff's symptoms waxed and waned during the relevant time period, but that her mental status examinations remained generally stable.  The ALJ noted that Plaintiff reported a suicide attempt to her therapist in August 2017, but was noted to be stable and "not depressed and does not have problems with her anxiety" a few months later.

---

[2] The Commissioner's Brief does not include page numbering.  Therefore, the court cites to the page numbers supplied by the software it uses to view the .pdf document filed in its Case Management/Electronic Case Filing (CM/ECF) system.

Id. (quoting R. 735).

The Commissioner noted the ALJ accorded great weight to the opinion of Dr. Karr, the psychologist who examined Plaintiff and some weight to the opinions of the state agency psychological consultants who reviewed the record, but little weight to the opinions of Ms. Ledlow and Ms. Peckham-Wichman who had treated Plaintiff.  (Comm'r Br. 5-7).  He acknowledges that Plaintiff's symptoms waxed and waned but argues that the ALJ's findings are supported by the record evidence and "the ALJ's well-reasoned decision should not be disturbed on review."  Id. at 7.  Finally, the Commissioner points out that in arguing the ALJ did not account for Dr. Karr's suggestion Plaintiff had difficulty concentrating effectively for short periods, "Plaintiff relies on a discrete notation contained in Dr. Karr's opinion, but ignores the doctor's conclusion that Plaintiff had adequate social skills, judgment, and insight and could perform simple or moderately complex tasks."  Id. at 8.

In her Reply Brief, Plaintiff reiterates her argument and asserts, "The issue in this case is not one where a reader may reach a different conclusion, but the ALJ's conclusions were reasonable.  Instead, here, the ALJ ignored the waxing and waning of symptoms and relied on an isolated view of the treatment record to discount the medical opinions, in error."  (Reply 3).

## A.    Standard for Evaluating Opinions of Healthcare Specialists

For claims filed before March 17, 2017, "[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's]

6

symptoms, diagnosis and prognosis." 20 C.F.R. § 416.927(a)(2).  Such opinions may not

be ignored and, unless a treating source opinion is given controlling weight, all medical

opinions will be evaluated by the Commissioner in accordance with factors contained in

the regulations.  Id. § 416.927(c); Soc. Sec. Ruling (SSR) 96-5p, West's Soc. Sec.

Reporting Serv., Rulings 123-24 (Supp. 2019).  A physician who has treated a patient

frequently over an extended period (a treating source) [3] is expected to have greater insight

into the patient's medical condition, and his opinion is generally entitled to "particular

weight."  Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003).  But, "the opinion of an

examining physician [(a nontreating source)] who only saw the claimant once is not

entitled to the sort of deferential treatment accorded to a treating physician's opinion."

Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)).  However, opinions

of nontreating sources are generally given more weight than the opinions of

nonexamining sources who have merely reviewed the medical record.  Robinson v.

Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463

(10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney

---

[3]The regulations define three types of "acceptable medical sources:"

"Treating source:" an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship.  20 C.F.R. § 416.902.

"Nontreating source:" an "acceptable medical source" who has examined the claimant but never had a treatment relationship.  Id.

"Nonexamining source:" an "acceptable medical source" who has not examined the claimant but provides a medical opinion.  Id.

v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

If a treating source opinion is not given controlling weight, the inquiry does not end.  Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003).  A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927."  Id.  Those factors are:  (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  Id. at 1301; 20 C.F.R. § 416.927(c)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the regulatory factors, the ALJ must give reasons in the decision for the weight she gives a medical opinion.  Id. 350 F.3d at 1301.  "Finally, if the ALJ rejects the opinion completely, [s]he must then give 'specific, legitimate reasons' for doing so."  Id.  (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

Recognizing the reality that an increasing number of claimants have their medical care provided by health care providers who are not "acceptable medical sources"—nurse

8

practitioners, physician's assistants, social workers, and therapists, the Commissioner

promulgated SSR 06-3p.  West's Soc. Sec. Reporting Serv., Rulings 327-34 (Supp.

2019).  In that ruling, the Commissioner noted:

> With the growth of managed health care in recent years and the emphasis
> on containing medical costs, medical sources who are not "acceptable
> medical sources," such as nurse practitioners, physician assistants, and
> licensed clinical social workers, have increasingly assumed a greater
> percentage of the treatment and evaluation functions previously handled
> primarily by physicians and psychologists.  Opinions from these medical
> sources, who are not technically deemed "acceptable medical sources"
> under our rules, are important and should be evaluated on key issues such
> as impairment severity and functional effects, along with the other relevant
> evidence in the file.

Id. Rulings, 330-31.

SSR 06-3p explains that such opinions will be evaluated using the regulatory

factors for evaluating medical opinions; id. at 331-32 (citing 20 C.F.R. § 416.927); and

explains that the ALJ "generally should explain the weight given to opinions from these

'other sources,' or otherwise ensure that the discussion of the evidence in the . . . decision

allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when

such opinions may have an effect on the outcome of the case."  Id. at 333; see also Frantz

v. Astrue, 509 F.3d 1299, 1302 (10th Cir. 2007) (remanding for consideration of a nurse-

practitioner's opinions in light of SSR 06-3p).

Moreover, all evidence from non-examining sources such as state agency

physicians and medical experts is considered opinion evidence.  20 C.F.R. § 416.927(e).

ALJs are not bound by such opinions but must consider them, except for opinions

regarding the ultimate issue of disability.  Id., § 416.927(e)(2)(i).  Their opinions must be

evaluated using the regulatory factors previously enumerated and the ALJ must explain in the decision the weight given those opinions.  Id., § 416.927(e)(2)(ii & iii).

### B.    The ALJ's Evaluation of the Mental Healthcare Specialists' Opinions

The ALJ accorded only some weight to the medical opinions of Dr. Duclos and Dr. Cohen.  She credited these opinions because they are "partially consistent with the overall evidence, … are generally consistent with the claimant's reported activities, [and] are also consistent with the claimant's mental status examination findings."  (R. 22).  She explained that although she accorded only some weight to the opinions, she had "further accommodated that [sic] claimant's social anxiety by limiting her to incidental contact with the public."    Id.  She accorded great weight to Dr. Karr's medical opinion because it was "consistent with the totality of the record … consistent with the claimant's reported activities, [and] also consistent with the claimant's mental status examination findings." Id.  She also noted "the claimant demonstrated good judgment, her attention span and concentration were adequate, and her fund of knowledge was average."  Id.

On the other hand, the ALJ accorded little weight to the opinions of the mental healthcare specialists who treated Plaintiff, finding they both provided functional limitations "out of proportion to the overall evidence," the "treatment notes indicated that the claimant's thought process was without disturbance, and her recent and remote memory was good," and "the claimant demonstrated good judgment, her attention span and concentration were adequate, and her fund of knowledge was average."  (R. 23).  She also discounted Ms. Ledlow's opinion because she "had only been treating the claimant for less than three months when this opinion was issued."  Id.

10

C.      **Analysis**

Although Ms. Ledlow and Ms. Peckham-Wichman are the mental healthcare providers who treated Plaintiff, they are not "treating sources" and their opinions are not "medical opinions" within the meaning of the Act and the Regulations.  20 C.F.R. §§ 416.902, 416.927.  Consequently, their opinions may not be accorded controlling weight, but they must be weighed in accordance with the regulatory factors for weighing medical opinions.  As noted in the court's discussion of the legal standard applicable to judicial review of a decision of the Commissioner, the court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  Frantz, 509 F.3d at 1300; Hackett, 395 F.3d at 1172; White, 287 F.3d at 905.  The starting point in the court's review is the rationale presented in the Commissioner's decision and not what another party, or even the court, might view as a "proper" weighing of the evidence.  42 U.S.C. § 405(g).  Therefore, the question for the court is whether the ALJ applied the correct legal standard in weighing the opinions of the various medical sources and whether the record evidence supports her findings of fact.

Plaintiff does not argue that the reasons given by the ALJ to discount the opinions of her treating providers or to credit the opinions of the non-treating source or non-examining sources are erroneous.  Rather she argues the ALJ "relied on the same reasons and evidence of record to afford [the opinions of her treating providers] little weight … relied too heavily on the normal examination findings while simultaneously ignoring the abnormal examination findings contained in treatment notes surrounding the ALJ's citations," and her "conclusions misrepresent the treatment record which, instead,

11

illustrates a <u>waxing and waning</u> of symptoms that are consistent with the treating source opinions." (Pl. Br. 11-12) (emphases added). Plaintiff acknowledges the ALJ cited treatment notes supporting her findings but points to treatment notes which were not so supportive. <u>Id.</u> at 12-14. She particularly points to one treatment note where

> she reported to the therapist that she tried to kill herself three to four days earlier by taking pills. The mental status examination at that visit showed almost entirely abnormal findings such as depressed mood and affect, delayed responses, soft and almost inaudible speech, poor insight, evasive and withdrawn behavior, and moderate risk to herself.

<u>Id.</u> at 13 (citing R. 761). Plaintiff concludes by arguing, "Additional mental limitations consistent with those found in the treating source opinions are supported by the record." <u>Id.</u> at 15. But, neither of Plaintiff's mental healthcare providers suggested that her opinion was based upon the waxing and waning of Plaintiff's symptoms or that Plaintiff would have periods of remission where she would be able to work. Rather, they both opined limitations that would preclude work all the time and that her condition would require her to miss approximately 4 days per month regularly. (R. 631-32, 813-14).

Thus, Plaintiff acknowledges that the record evidence supports the ALJ's findings but argues that the ALJ picked and chose evidence supporting her conclusion while ignoring contrary evidence of waxing and waning symptoms. The question for the court, then, is whether the ALJ ignored portions of the evidence or misrepresented the record evidence and whether the record evidence compels finding greater mental limitations than the ALJ found. The court finds that she did not, and that the evidence does not compel greater mental limitations.

As Plaintiff suggests, the ALJ cited evidence supporting her findings.  But she did not ignore the contrary evidence.  The ALJ devoted more than five pages of her fifteen-page decision to discussion of Plaintiff's mental impairments and the treatment records and medical opinions related thereto.  (R. 15-16, 19-21, 22-24).  She noted that Plaintiff reported "situational life stressors of financial concerns and difficulty with her children." (R. 27).   The ALJ specifically acknowledged Plaintiff "reported a suicide attempt to her therapist in August 2017."  (R. 20) (citing Ex. B27F/36, R. 761).  Plaintiff was not hospitalized in that instance, there is no record evidence of any other suicide attempt, and there is no evidence of any emergency treatment or hospitalization because of Plaintiff's mental impairments.

The evidence is almost always equivocal in a Social Security disability case, and it is the Commissioner's duty—the ALJ's duty in this case—to evaluate the evidence and make her decision based thereon.  While the ALJ clearly might have weighed the mental healthcare specialists' opinions differently in this case, the evidence does not compel a different weight.  The fact the ALJ relied on substantially similar evidence in weighing all the opinions in this case is unremarkable because the evidence detracting from an opinion will also tend to detract from all similar opinions and will support contrary opinions.

The Commissioner acknowledges the record reveals waxing and waning of Plaintiff's mental impairments, and the ALJ recognized the evidence did not point but one direction.  Nonetheless, the waxing and waning revealed by the record in this case is not the sort of waxing and waning suggested by the cases relied upon by Plaintiff.  The

record here reveals that Plaintiff's mental impairments caused more problems at times

than at other times and on one occasion Plaintiff reported to her counselor that she had

attempted suicide "3 to 4 days ago by trying to take pills." (R. 761). However,

Plaintiff's mental impairments did not result in frequent hospitalization or other

decompensation as was present in Freemyer. 723 F. Supp. at 1418. In fact, Plaintiff

reported that "her boyfriend came into her room before she could ingest any" pills and

took the key. (R. 761). Moreover, Plaintiff "denied any other plan to kill herself." Id.

 The next case, Long involved a claimant who

was severely injured in a motor vehicle accident when her vehicle collided
with a semi-truck. She was immediately hospitalized and later that day
underwent her first surgery for extensive injuries including abrasions,
contusions, and numerous bone fractures. She remained in the hospital for
approximately two months and underwent numerous additional surgeries
and extensive physical therapy.

Approximately nine months after the accident, in August of 2000, she
attempted to return to her work as a city clerk in a part-time capacity.
Almost immediately, she began experiencing headaches, short-term
memory difficulties, difficulty concentrating, an inability to stay focused,
and abnormal movement in her left eye. A neurologist diagnosed her with
a probable head injury with a cerebral concussion and post head injury
syndrome with impaired concentration, memory, and attention to detail.
The neurologist also noted diplopia (double vision). Plaintiff also
continued to experience pain in her extremities especially where her bones
had been screwed together. In November of 2000, she underwent yet
another surgery for her physical ailments. In a narrative report dated
January 12, 2001, plaintiff's primary treating physician, Gregory M.
Thomas, M.D., concluded:

  In summary, this patient had a closed head injury which turns
  out to have been the most devastating part of her severe car
  accident despite the many fractures that took a long time to
  heal. She is not able to function at the city clerk level and, in
  fact, finds just simple clerical work beyond her abilities at this

14

> time due to fatigue and inability to stay on task with short
> term memory.

2004 WL 1960104, *1 (quoting the record).  In <u>Long</u> the claimant's mental abilities

worsened due to her traumatic brain injury.  The court found the ALJ applied the

incorrect legal standard in evaluating the opinion of the claimant's treating physician and

the ALJ's determination was not supported by substantial evidence.  <u>Id.</u> at *5.  In

evaluating the opinions of the psychologists regarding Plaintiff's mental abilities, "[t]he

ALJ gave the opinions of Dr. Kohrs and Dr. Lewis 'significant weight as they are

consistent with the record and based on objective test results.'"  2004 WL 1960104, *6

(quoting the decision).  The ALJ discounted the opinion of Dr. Pearce because it was

contrary to the opinions of Drs. Kohrs and Lewis which were consistent with each other.

<u>Id.</u>  The court found that although Dr. Kohrs's opinion was consistent with Dr. Lewis's

opinion in finding mild neurocognitive impairment of higher cognitive abilities, it "is

otherwise largely inconsistent with Dr. Lewis's opinion."  <u>Id.</u> at *8.  It found the ALJ had

picked and chosen within Dr. Lewis's opinion in violation of the holding of <u>Robinson</u>,

366 F.3d at 1083, to find the opinion consistent with Dr. Kohrs's opinion.  <u>Id.</u>  Here, as

the court found above, the ALJ did not pick and choose among the evidence or the

opinions.

The case of <u>Robert-Jewett</u> is no more helpful to Plaintiff's case.  As Plaintiff

suggests, this court in <u>Robert-Jewett</u> noted that the ALJ there discounted Dr. Werder's

opinion because the claimant consistently reported that her anxiety was not as severe as

Dr. Werder opined, 2012 WL 1388733 *4, whereas the record in this case reveals

Plaintiff's reported symptoms of different severity at different times.  But, in this case the ALJ recognized Plaintiff's varying reports and noted repeatedly that her mental status examinations were generally within normal limits, remained stable on her medication regimen, she was adequately dressed and groomed, well-articulated, goal directed, reality orientated, intact cognition, thought processes undisturbed, recent and remote memory good, and good judgment.  The record evidence supports the ALJ's findings.  While the evidence might also support Plaintiff's view, it does not compel it and the court may not impose a different view on the Commissioner.

Finally, the court finds that Dr. Karr's opinion is not consistent with Plaintiff's mental healthcare providers' opinions despite Plaintiff's contrary assertion.  Plaintiff acknowledges that the ALJ accorded great weight to Dr. Karr's opinion but argues that she failed to account for the opinions that Plaintiff "had difficulty demonstrating the ability to concentrate effectively for short periods and that she was capable of at least average intellectual skills [only] if depression and anxiety are decreased.  (Pl. Br. 15).  As Plaintiff's argument suggests, Dr. Karr stated in the body of her report

> The claimant had difficulty demonstrating the ability to concentrate effectively for short periods.  She was able to count to 20 by 2s, and back to zero, with no errors.  She attempted to complete serial 3s from 40, and made one error.  Serial 7s from 100 were attempted, also, and she made two errors.  When asked to spell world backwards, she correctly stated, "DLROW".

(R. 436).  She also stated, "The claimant appears to be capable of at least average intellectual skills, if depression and anxiety are decreased."  Id.  However, neither statement demonstrates a significant limitation.  Plaintiff was able to concentrate

16

sufficiently to count forward and backward to 20 by 2s and to spell world backward and she only made three errors counting by 3s and by 7s.  Moreover, the report does not explain how decreasing depression and anxiety would increase the capability for intellectual skills.  However, neither the ALJ nor this court had to address these ambiguities because, as the Commissioner points out, Dr. Karr clarified in her "Capabilities Statement" that Plaintiff "appears to be of <u>at least</u> average intellectual abilities," and she

> can understand and remember simple or moderately complex instructions during a normal workday.  The claimant does seem to have the intellectual capacity to remember either simple or moderately complex directions.  The claimant <u>can concentrate and persist on simple or moderately complex tasks during a normal workday</u>.

(R. 437) (emphases added).  This opinion is clearly not consistent with the mental healthcare providers opinions of extensive mental limitations, but it is supportive of the RFC assessed by the ALJ.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated June 15, 2020, at Kansas City, Kansas.


s:/  *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**